(c)<u>Covenants by Mortgagor</u>. Mortgagor covenants that, with respect to each Lease, it will not, without Mortgagee's prior written consent: (i) accept prepayment of any installment of Rents payable thereunder other than prepayment of one month's Rents; (ii) amend or modify the Lease so as to reduce the unexpired term thereof, decrease the amount of Rents payable thereunder or otherwise diminish any obligation imposed therein upon the lessee; (iii) unless the lessee has failed to comply with a material obligation imposed upon it in the Lease, terminate, accept surrender of or permit cancellation of the Lease if the unexpired term thereof is one year or longer; (iv) modify, amend, extend, renew, terminate or accept the surrender of the Lease if twenty-five percent (25%) or more of the rentable area of the Premises is demised thereunder (any such Lease, a "<u>Major Lease</u>"); (v) pledge, mortgage, assign or otherwise transfer the Lease or any interest of Mortgagor therein or all or any portion of the Rents payable by the lessee thereunder as security for any obligation; (vi) subordinate the Lease to any mortgage (other than this Mortgage) or other encumbrance; (vii) sell, assign, transfer or set over the Lease or any interest therein or Rents thereunder, except in connection with a conveyance of the Premises and then only if expressly made subject to this Mortgage and if permitted by the express terms of the Mortgage; (viii) consent to, waive or permit to continue any violation of any obligation imposed upon the lessee under the Lease; or (ix) consent to or permit the modification, amendment, termination or surrender of any guaranty of the Lease. In addition, Mortgagor covenants that it will not, without Mortgagee's prior written consent, (A) enter into a Major Lease; execute, consent to or permit an assignment of a Major Lease; or consent to or permit the subletting, in whole or in part, of any space leased pursuant to a Major Lease (Mortgagee's consent with respect to the transactions referred to in this clause (A) not to be unreasonably withheld or delayed); or (B) enter into any Lease (x) except for actual occupancy by the lessee of all of the space demised thereunder, (y) unless the Lease, by its express terms, (1) is unconditionally subject and subordinate to the lien of this Mortgage and provides that, in the event Mortgagee or its designee or nominee succeeds to the interest of Mortgagor under such Lease, the lessee thereunder shall, at the option of Mortgagee or such designee or nominee, promptly attorn to Mortgagee or such successor in interest and recognize such party as lessor under the Lease and confirm such attornment and recognition in writing, and (2) requires the lessee upon demand to duly execute, acknowledge and deliver to Mortgagee a certificate (an "<u>Estoppel Certificate</u>") with respect to the status of such Lease and such matters relating to the status of such Lease as any mortgagee may reasonably require, or (z) pursuant to which the lessee or any other person or entity shall have an option, right of first refusal or other right with respect to the acquisition by it of the Premises or any part thereof.

(d)<u>Additional Covenants by Mortgagor</u>. Mortgagor covenants that, with respect to each Lease, it will: (i) fully, faithfully and punctually comply with all of the obligations imposed upon the lessor thereunder; (ii) within five days after request therefor by Mortgagee, (A) deliver to Mortgagee copies of executed originals of all Leases and other instruments affecting the Mortgaged Property and (B) request an Estoppel Certificate from any lessee designated by Mortgagee; (iii) give prompt notice to Mortgagee of the failure by either the lessor or the lessee to comply with any obligation imposed upon such party under the Lease, with a copy of any notice of default or other communication with respect thereto given by either the lessor or the lessee to the other; and (iv) enforce compliance by the lessee with all obligations imposed upon it therein. In case of any inconsistency or conflict between the provisions of this Mortgage and the provisions of the Lease Assignment, the provisions of this Mortgage which expand rather than restrict the rights of Mortgagee shall in each instance govern and control.

Mortgagor has not and shall not: (a) engage in any business or activity other than the ownership, operation and maintenance of the Premises and activities incidental thereto: b) acquire or own any material assets other than (i) the Premises, and (ii) such incidental personal property as may be necessary for the operation of the Premises; (c) merge into or consolidate with any person or entity or dissolve, terminate or liquidate in whole or in part, transfer or otherwise dispose of all or substantially all of its assets or change its legal structure, without in each case Mortgagee's prior written consent: (d) fail to preserve its existence as an entity duly organized, validly existing and in good standing (if applicable) under the laws of the jurisdiction of its organization or formation, or without the prior written consent of Mortgagee, amend. modify, terminate or fail to comply with the provisions of articles or certificate of incorporation, or organizational documents, as same may be further amended or supplemented, if such amendment, modification. termination or failure to comply would adversely affect the ability of Borrower to perform its obligations hereunder or under the Note or under the other Loan Documents; (e) own any subsidiary or make any investment in any person or entity without the prior written consent of Mortgagee: (f) commingle its assets with the assets of any of its obligations, shareholders, affiliates, principals or of any other person or entity; (g) incur any debt, secured or unsecured direct or contingent (including guaranteeing any obligation), other than the Obligations, except with respect to trade payables in the ordinary course of its business of owning and operating the Premises. provided that such debt is paid when due: (h) fail to maintain its records, books of account and bank accounts separate and apart from those of the shareholders, principals and affiliates of Mortgagee, and any other person or entity; or (ii) enter into any contract or shareholder, principal or affiliate of Mortgagor, or Guarantor, except upon terms and conditions that are unequivocally fair and substantially similar to those that would be available on an arms-length basis with third parties other than any shareholder, principal or affiliate of Mortgagor or Guarantor, shareholder, principal or affiliate thereof (i) seek the dissolution or >winding up in whole, or in part. of Mortgagor; (k) maintain its assets in such a mariner that it will be costly or difficult to segregate, ascertain or identify its individual assets from those of any shareholder, principal or affiliate of Mortgagor, or any other person; (1) hold itself out to be responsible for the debts of another person; (m) make any loans to any third party; (n) fail either to hold itself out to the public as a legal entity separate and distinct from any other entity or person or to conduct its business solely in its own name in order not (i) to mislead others as to the identity with which such other party is transacting business or ii to suggest that Mortgagor is responsible for the debts of any third party (including any shareholder, principal or affiliate of Mortgagor, or shareholder, principal or affiliate thereof (o) fail to maintain adequate capital for the normal obligations reasonably foreseeable in a business of its size and character and in light of its contemplated business operations or (p) file or consent to the filing of any petition, either voluntarily or involuntarily, to take advantage of any applicable insolvency. bankruptcy, liquidation or reorganization statute, or make an assignment for the benefit of creditors.

(e) List of Lessees. Mortgagor shall furnish to Mortgagee, within fifteen days after Mortgagee's request, a written statement containing the names and social security or taxpayer identification numbers of all lessees of the Mortgaged Property or any portion thereof, the terms of their respective Leases, the space occupied and the rentals payable and security deposited thereunder.

-19-

(f) Effect of Separate Lease Assignment. Any prohibitions and restrictions affecting the leasing of the Mortgaged Property contained in the Lease Assignment (which are hereby incorporated by reference in this Mortgage) shall supplement the prohibitions and restrictions affecting the leasing of the Mortgaged Property contained in this Section 1.15.

(g) Effect of Event of Default. Notwithstanding anything to the contrary in this Mortgage, during the pendency of any uncured Event of Default, Mortgagor shall not enter into any Lease, relocate any existing lessee, or make or permit any modification, amendment, extension or assignment of an existing Lease or the subletting, in whole or in part, of any space leased pursuant to an existing Lease without Mortgagee's prior written consent.

1.16. Casualty to Mortgaged Property. In the event of any damage or destruction affecting the Mortgaged Property (other than damage or destruction that, in Mortgagee's good faith judgment, renders the Mortgaged Property unsuitable for restoration), Mortgagor shall promptly commence and thereafter diligently prosecute to completion, at the sole cost and expense of Mortgagor, in accordance with all applicable Requirements and in a good and workmanlike manner the replacement, repair or restoration of the Mortgaged Property as nearly as practicable to the value, condition, character and general utility thereof immediately prior to such damage or destruction, whether or not the insurance proceeds paid in respect of such damage or destruction shall be made available to Mortgagor or, if made available, shall be sufficient for such purpose. The lien of this Mortgage shall continue to apply to the Mortgaged Property as replaced, repaired or restored.

1.17. Interest after Default. If an Event of Default shall occur under this Mortgage, then all interest required to be paid by Mortgagor with respect to the entire principal of the Note then outstanding and other components of the indebtedness secured by the Loan Documents (including, without limitation, expenses referred to in Article 2 of this Mortgage) shall be computed at the Involuntary Rate from and after the date of the occurrence of the default that is the basis of such Event of Default until the date that payment of such indebtedness in its entirety is received by Mortgagee.

1.18. Due on Transfer. (a) Mortgagor shall not (i) sell, assign, lease, convey, mortgage, pledge, hypothecate, make the subject of any security interest, exchange, subdivide or permit to be divided into multiple condominium units, or in any other manner whatever transfer or encumber all or part of, or any interest in, or any of the Rents derived from, or control of, the Mortgaged Property, or suffer or permit any of the foregoing to occur, whether by operation of law or otherwise; or (ii) agree in writing (whether on a conditional or unconditional basis) to do any of the foregoing; or (iii) effectuate or permit a reduction in the ownership interests in Mortgagor held by any Principal(s) of Mortgagor; or (iv) effectuate or permit a closing of any public or private offering of ownership interests in Mortgagor or in any entity directly or indirectly owning any interest in Mortgagor; or (v) effectuate or permit a transfer of the controlling interest in Mortgagor. "Transfer of the controlling interest in Mortgagor" includes: (1) the sale, assignment, issuance, redemption, diminution or pledge, whether through a single transaction or a series of transactions, of the direct or indirect controlling ownership interest of Mortgagor or of any entity that directly or indirectly controls Mortgagor; (2) the modification of any organizational documents of Mortgagor or of any entity that directly or indirectly controls Mortgagor if the effect of such modification is to transfer ownership or control of such entity; (3) the dissolution or termination, whether by operation of law or otherwise,

of Mortgagor or of any entity that directly or indirectly controls Mortgagor; and (4) any other transaction or series of transactions by which any person(s) other than the Principal(s) of Mortgagor obtain control of Mortgagor or the Mortgaged Property. Nothing in this Section 1.18 shall, however, prohibit the Lease Assignment and all other applicable Loan Documents.

(b)Notwithstanding anything contained in subsection (a) above, provided that there has not occurred an Event of Default hereunder or a default beyond all applicable notice and grace periods under any of the other Loan Documents, Joseph Dedona and Thomas Borek shall each be entitled to transfer any portion of his respective interest in Mortgagor to the other or to his children or to any trust established solely for the benefit of any of the same. Any such transfer shall not require Mortgagee's prior consent, but Mortgagor shall promptly notify Mortgagee of such transfer in writing.

1.19.  Costs of Litigation and Certain Proceedings. If any action or proceeding of any kind (including, without limitation, any bankruptcy, insolvency, arrangement, reorganization or other debtor relief proceeding or any action arising under or in respect of any Lease) is commenced, or if there occurs any other event or is created any circumstance that Mortgagee determines might affect Mortgagor's or Mortgagee's interest in the Mortgaged Property, or the validity, enforceability or priority of the lien of this Mortgage, or Mortgagee's rights or remedies under any of the Loan Documents, then Mortgagee may, without notice (Mortgagor expressly waiving any such notice) and at Mortgagee's option, make such appearances, disburse such sums and take any such other actions (including, without limitation, the commencement and prosecution of any action against Mortgagor to enforce the terms of any Loan Document) as Mortgagee deems necessary or desirable. If Mortgagee takes any action referred to in the preceding sentence, then Mortgagor shall, upon demand by Mortgagee, pay all reasonable fees and costs incurred by Mortgagee in connection therewith (including, without limitation, attorneys' fees and expenses). Mortgagee's right to receive any payment provided for hereinabove shall be deemed to have accrued upon the commencement of the applicable action or proceeding and shall be enforceable by Mortgagee whether or not same is prosecuted to judgment. At Mortgagee's direction, any payment(s) that Mortgagor is obligated to make pursuant to this Section 1.19 shall be made to third parties rather than to Mortgagee.

1.20.  Late Charge. If all or any portion of any payment required to be made to Mortgagee (whether pursuant to the Note or any other Loan Document) is not received on or before the fifth day after the date such payment is due (without reference to any grace period provided for in the Loan Documents), a late charge of ten percent (10%) of the amount so overdue shall immediately be due to Mortgagee. Any such late charge shall be paid no later than the due date of the next subsequent installment of interest payable under the Note and, if not so paid, shall bear interest at the rate then in effect with respect to the principal sum of the Note but in no event greater than the maximum amount permitted by law. In the event, Mortgagee sends a notice of default, Mortgagor shall pay to Mortgagee $150 each notice and if a check delivered to Mortgagee in payment of any sum due under any Loan Document is dishonored, a fee in the amount of $250.00 shall be paid.  At the option of Mortgagee, the charges specified in this section may be deducted from the funds held by Mortgagee pursuant to Section 1.11.

1.21.   Trust Fund.  If the Mortgaged Property is situated in New York State, this Mortgage is made subject to the trust fund provisions of Section 13 of the New York Lien Law, and Mortgagor covenants that it shall receive all moneys and advances secured hereby and shall hold the right to receive such advances as a trust fund to be applied first for the purpose of paying costs of improvement before using any part of the same for any other purpose.

1.22.   Charges for Tax Searches, Etc.  Mortgagor shall pay the reasonable fees and costs (including attorneys' fees and expenses) incurred by Mortgagee in obtaining tax searches and tax bills and of processing, or otherwise dealing with, ownership transfers, insurance payments, releases, modifications, prepayments, extensions, consents, assignments, reduction certificates, satisfactions and other matters.  At the option of Mortgagee, charges for these items may be deducted from the funds held by Mortgagee pursuant to Section 1.11.

1.23.   Prepayment.  The Note may not be prepaid in whole or in part except in accordance with the provisions of the Note.

1.24.   Restrictions Affecting Mortgaged Property.  Mortgagor shall not (a) initiate, join in, execute or consent to any change in any covenant, condition, restriction, declaration, zoning ordinance, or other public or private restriction limiting, defining or otherwise controlling construction on, or use(s) of, all or any part of the Mortgaged Property (collectively, "Restrictions"), (b) suffer or permit any building or other improvement situated on land that is not part of the Mortgaged Property to rely on the Premises in order to comply with any Requirement or (c) impair the integrity of the Mortgaged Property as a zoning lot separate and apart from all other premises.  Mortgagor shall at all times strictly comply with all Restrictions.

1.25.   Hazardous Substances.

(a) Compliance With Environmental Laws.  Mortgagor shall at all times promptly comply, and shall cause all lessees and other persons and entities which occupy or enter upon the Mortgaged Property at all times promptly to comply, with all Environmental Laws insofar as same apply to the Mortgaged Property.  Without limiting the generality of the foregoing, (i) Mortgagor shall cause all Environmental Authorizations to be maintained in full force and effect, (ii) Mortgagor shall not cause, suffer or permit (or suffer or permit any lessee or any other person or entity to cause, suffer or permit) any Hazardous Substance to be used, received, handled, generated, manufactured, produced, processed, treated, stored, released, placed, spilled, discharged, disposed of or dispersed at, on under or about the Mortgaged Property except pursuant to and in accordance with Environmental Laws, and (iii) if, other than in accordance with the provisions of the immediately preceding clause (ii), any Hazardous Substance(s) shall at any time be present at, on or under the Mortgaged Property, Mortgagor, whether or not so directed by Mortgagee, shall undertake the appropriate Remedial Work (as defined below) or take such other action as shall be necessary in order to cause said Hazardous Substance(s) promptly to be removed therefrom.

(b) Liens.  If any lien shall be filed against, or imposed upon, the Mortgaged Property with respect to non-compliance with any Environmental Law, Mortgagor promptly shall (i) give Mortgagee notice thereof and (ii) cause such lien to be discharged or bonded or otherwise secured to Mortgagee's satisfaction.

-22-

(c) <u>Notice to Mortgagee</u>. If Mortgagor shall (i) obtain knowledge of any fact or circumstance which might render inaccurate any representation or warranty contained in Section 3.14 below, Mortgagor shall promptly give Mortgagee notice thereof, or (ii) receive any summons, citation, directive, order, Notice or other communication from any Governmental Authority relating to the application of any Environmental Law to the Mortgaged Property, Mortgagor shall promptly send a copy of same to Mortgagee. In addition, if any Environmental Law requires that an Environmental Condition be reported (as, for example, when a Release of Hazardous Substances occurs), Mortgagor shall promptly make such report in accordance with such Environmental Law and simultaneously provide Mortgagee with all information contained therein. "<u>Release</u>" shall have the definition set forth in Section 101(22) of the Environmental Response, Compensation and Liability Act, 42 U.S.C. 6902 et. seq.

(d) <u>Representations, Etc.</u> Mortgagor shall not take or omit to take (or suffer or permit any lessee or other person or entity occupying the Mortgaged Property to take or omit to take) any action which, if taken or omitted to be taken, would render inaccurate any representation or warranty contained in Section 3.14.

(e) <u>Remedial Work</u>. If Mortgagee, acting in its sole and absolute discretion,

(i)    determines that any investigation, site monitoring, environmental audit and risk assessment, containment, clean-up, encapsulation, removal, restoration or other remedial work of any kind (any of the foregoing, "<u>Remedial Work</u>") is necessary or desirable in connection with (A) the known or suspected presence at, on, under or about the Mortgaged Property of any Hazardous Substance(s) or (B) the requirements of any Environmental Law or the suspected violation of any Environmental Law, or

(ii)    determines that the condition of the Mortgaged Property or the validity, priority or enforceability of the lien of this Mortgage has been or may be impaired or in any way adversely affected by reason of (A) any failure to comply with any Environmental Law as the same pertains to the Mortgaged Property, (B) any other failure by Mortgagor fully to comply with any obligation imposed upon Mortgagor in this Section 1.25, or (C) the inaccuracy of any representation or warranty contained in Section 3.14, then, in any such event, Mortgagor shall, promptly after written demand by Mortgagee for performance thereof, either (I) commence to perform and thereafter diligently prosecute to completion the Remedial Work, or (II) take such other action as Mortgagee may specify. All Remedial Work shall be performed by contractors employed by Mortgagor and in accordance with plans that first shall have been approved by an independent consultant employed by Mortgagee but paid by Mortgagor.

For the purpose of making a determination pursuant to this Section 1.25(e), (x) Mortgagor shall provide access to Mortgagee and its agents and employees to the Mortgaged Property and all applicable books and records (including, without limitation, those which pertain to Authorizations), and (y) Mortgagee shall be entitled, from time to time, in addition to all of Mortgagee's other rights and remedies under this Mortgage, to cause an environmental audit and risk assessment of the Mortgaged Property to be conducted by an independent engineering firm or other environmental audit manager designated by Mortgagee. In the event Mortgagor fails timely to

commence or diligently to prosecute to completion any Remedial Work or other action required to be undertaken pursuant to this Section 1.25, Mortgagee may, but shall not be required to (and without any liability or obligation by Mortgagee to Mortgagor with respect thereto), arrange for same to be performed. All costs and expenses incurred pursuant to, or with respect to the subject matter of, this Section 1.25 shall be borne by Mortgagor, and all moneys paid by Mortgagee and all costs and expenses incurred by Mortgagee in connection with this Section 1.25, together with interest thereon computed at the Involuntary Rate, shall be repaid to Mortgagee in accordance with the provisions of Section 1.10 above.

(f)    Indemnification. Mortgagor shall defend and indemnify the Indemnified Parties against, and shall save the Indemnified Parties harmless from, and shall reimburse the Indemnified Parties with respect to, any and all Liabilities and Expenses (as hereinafter defined) incurred by, imposed upon or asserted against the Indemnified Parties or any one or more of them by reason of, or in connection with:

(i)    the presence, existence, use, handling, generation, manufacture, production, processing, treatment, storage, release, placement, spill, discharge, disposal or dispersal of any Hazardous Substance(s) on, at or under the Mortgaged Property, or any threatened occurrence of any of the foregoing, or any Remedial Work or other action taken by Mortgagee or any of the Indemnified Parties with respect to any of the foregoing pursuant to this Section 1.25; or

(ii)    the inaccuracy of any representation or warranty made by Mortgagor in Section 3.14 below; or

(iii)    the failure of Mortgagor or anyone else to comply with any Environmental Law(s) as same pertain to the Mortgaged Property or any provision of the Loan Documents that pertains to the subject matter of this Section 1.25.

For the purposes of this Section 1.25, "Liabilities and Expenses" shall mean (x) all claims, demands, actions, causes of action, injuries, orders, losses, liabilities (statutory or otherwise), obligations, damages (including, without limitation, consequential damages), fines, penalties, costs and expenses in any manner arising out of or relating to the subject matter of this Section 1.25 (including, without limitation, any of the foregoing relating to loss of life, injury to persons, property or business, or damage to natural resources), and (y) any and all moneys payable to Mortgagee pursuant to this Section 1.25; as used herein, "costs and expenses" shall, without limitation, include all fees charged by and expenses of attorneys, accountants, engineers, contractors, environmental specialists and other professional consultants and advisors with respect to the subject matter of this Section 1.25 and the enforcement or attempted enforcement of Mortgagee's rights under the Loan Documents with respect to said subject matter (whether incurred in connection with litigation or bankruptcy proceedings or negotiations with Mortgagor, Principal(s) of Mortgagor, lienors or other parties in interest (such as receivers and trustees) or otherwise). Liabilities and Expenses shall not be limited to the amount of the Loan. Notwithstanding anything to the contrary contained in this Mortgage, Mortgagor and the Principals of Mortgagor shall not be liable for the acts of Mortgagee or its nominee with respect to environmental conditions that first arose after the date Mortgagee or its nominee shall have taken title to the Mortgaged Property.

(g) <u>Release</u>. Mortgagor releases and discharges the Indemnified Parties from, and relinquishes and waives, any and all claims, actions, causes of action, demands and suits which Mortgagor now or hereafter may or shall have against the Indemnified Parties or any one or more of them with respect to the subject matter of this Section 1.25.

1.26. <u>Further Assurances</u>. Mortgagor shall, at Mortgagor's sole cost and expense, promptly deliver to Mortgagee all Documents of Further Assurance and undertake such further acts as Mortgagee shall from time to time request in order to (a) confirm the lien of this Mortgage and the mortgaging to Mortgagee of the Mortgaged Property (including, without limitation, all betterments, renewals, extensions and replacements of, all substitutions for, and all additions, accessions and appurtenances to any portion of the Mortgaged Property), (b) confirm the security interests herein granted to Mortgagee in portions of the Mortgaged Property and (c) satisfy any Requirement that restricts, establishes conditions to, burdens, limits or otherwise affects Mortgagee's exercise of Mortgagee's rights and remedies under, or with respect to the subject matter of, this Mortgage. "<u>Documents of Further Assurance</u>" shall include, without limitation, deeds, mortgages, security agreements, UCC-1's, UCC continuation statements, assignments, title insurance updates, affidavits, certificates, opinions of counsel, estoppel letters, insurance certificates and consent letters. If Mortgagee certifies to Mortgagor that the Note has been misplaced, lost or mutilated and that Mortgagee has not endorsed, assigned or otherwise transferred the Note, Mortgagor shall deliver to Mortgagee an original duplicate note in the same form as the Note, Mortgagee hereby agreeing to indemnify Mortgagor against any loss or expense incurred by Mortgagor as a consequence of Mortgagor's having delivered such duplicate note. All documentation to be delivered by Mortgagor pursuant to this Section 1.26 shall be in form and substance reasonably satisfactory to Mortgagee.

1.27. <u>Notice to Mortgagee</u>. Mortgagor shall give notice to Mortgagee promptly upon the occurrence of (a) any Event of Default or any fact, event or circumstance that after notice or passage of time or both would constitute an Event of Default; (b) any litigation, proceeding or investigation commenced by, or that involves, any Governmental Authority that might result in the impairment of Mortgagee's security for the Loan or any other fact, event or circumstance that might result in the impairment of such security; and (c) any material adverse change in the operations or financial or other condition of the Mortgaged Property or any portion thereof.

1.28. <u>Set-Off</u>. Mortgagor, to further secure Mortgagor's full, faithful and punctual compliance with the obligations imposed upon it in the Loan Documents, hereby (i) pledges and grants to Mortgagee, and grants to Mortgagee a security interest in and to, any and all deposits (general or special, time or demand, provisional or final) at any time held and other indebtedness at any time owing by Mortgagee to or for the credit or account of Mortgagor (collectively, "<u>Deposits</u>") and (ii) irrevocably authorizes and directs Mortgagee at any time and from time to time upon the occurrence of an Event of Default, without notice to Mortgagor (any such notice being expressly waived by Mortgagor) and to the fullest extent permitted by law, to set off and apply any Deposits (other than tenant security deposits) against any and all obligations of Mortgagor now or hereafter existing under the Loan Documents, irrespective of whether or not Mortgagee shall have made any demand under the Loan Documents and although such obligations may be contingent or unmatured. From and after the date of the occurrence of any Event of Default, Mortgagee shall have dominion and control over such Deposits and shall have the sole ability to make withdrawals with respect to such Deposits. The rights of Mortgagee under this section are in addition to such other rights and

remedies (including, without limitation, other rights of set-off) as may be available to Mortgagee under the Loan Documents, at law or in equity.

1.29. <u>Obligations Secured</u>. Whenever in this Mortgage or any other Loan Document it is stated that Mortgagor shall be obligated to pay or repay any moneys to Mortgagee or to any third party or to reimburse Mortgagee in respect of costs and expenses incurred by Mortgagee or anyone employed by, or acting on behalf of, Mortgagee, then any such payment, repayment or reimbursement obligation shall be deemed to be part of the indebtedness that is secured by this Mortgage.

### ARTICLE 2

### Events of Default and Remedies

2.1. <u>Definition of Event of Default</u>. For all purposes of the Loan Documents, the occurrence of any one or more of the following shall constitute an Event of Default:

(a) <u>Nonpayment of Note</u>. If Mortgagor fails to make any payment required under the Note (including the outstanding principal amount of the Note payable on the Loan Maturity Date) when and as the same shall become due and payable, and such failure continues for five (5) days, provided, however, that said five (5) day grace period shall not apply to the payment of any moneys required to be paid by Mortgagor upon the Loan Maturity Date (or sooner, if applicable, by reason of acceleration); or

(b) <u>Liens</u>. If any proceeding is commenced to foreclose a lien upon the Mortgaged Property or any portion thereof or if any other action is taken to enforce any such lien and, within twenty days after the commencement of such proceeding or taking of such action, said lien is not discharged of record by payment, deposit, bond, order of a court of competent jurisdiction or otherwise; or

(c) <u>Action by Governmental Authority</u>. If any Governmental Authority imposes a fine or penalty with respect to Mortgagor's failure to pay an Imposition in a timely manner or if, following Mortgagor's election to contest the amount of validity of any Imposition, Mortgagor fails to duly perform or comply with any provision set forth in Section 1.7(c); or

(d) <u>Failure to Comply with Section 19 and 1.13.</u> If Mortgagor fails fully, faithfully or punctually to perform or comply with any obligation on the part of Mortgagor to be performed or complied with pursuant to Section 1.9 or 1.13; or

(e) <u>Failure to Give Notice</u>. If Mortgagor fails to give Mortgagee, when and as required, any notice required to be given to Mortgagee by Mortgagor pursuant to this Mortgage; or

(f) <u>Nonpayment of Certain Charges</u>. If Mortgagor fails to make any payment required by Section 1.4 (other than a payment to which paragraph (a) applies), 1.7(a) or 1.11, and such failure continues for twenty days; or

(g) _Default in Performance of Certain Obligations_. If Mortgagor fails fully, faithfully or punctually to perform or comply with any obligation on the part of Mortgagor to be performed or complied with pursuant to Section 1.2, 1.3, 1.8, 1.10, 1.12, 1.20 or 1.22, and such failure continues for twenty (20) days after Mortgagee has given Mortgagor written notice thereof; or

(h) _Other Failure to Perform_. If Mortgagor fails fully, faithfully or punctually to perform or comply with any other obligation on the part of Mortgagor to be performed or complied with pursuant to any Loan Document (except as described in the preceding paragraphs (a) through (g)) and such failure continues for the lesser of (i) thirty (30) days after Mortgagee has given Mortgagor written notice thereof (unless such default cannot with due diligence be cured within thirty days but can be cured within a reasonable period, in which case no Event of Default shall be deemed to exist so long as Mortgagor shall have commenced to cure the default within thirty (30) days after receipt of notice, and thereafter diligently and continuously prosecutes such cure to completion) or (ii) such period of time, if any, as is set forth with respect to such failure in any other Loan Document; or

(i) _Misrepresentation, Etc._ If any warranty, representation or other statement made (i) by or on behalf of Mortgagor or by any Principal of Mortgagor in, pursuant to, or in connection with any Loan Document, or (ii) in connection with any other loan made by Mortgagee to Mortgagor or any Principal of Mortgagor or any borrower of which a Principal of Mortgagor is a principal, or (iii) by or on behalf of any Guarantor in or pursuant to any guaranty delivered to Mortgagee in connection with the Loan is false, incorrect or misleading in any material respect; or

(j) _Default Under Another Loan_. If Mortgagor, a Principal of Mortgagor or any borrower of which a Principal of Mortgagor is a principal is in default beyond the expiration of any applicable grace period with respect to any Senior Mortgage or any other loan made by Mortgagee to Mortgagor, a Principal of Mortgagor or such borrower; or

(k) _Nonpayment of Debts_. If Mortgagor shall be generally not paying its debts as they become due; or

(l) _Voluntary Adverse Financial Events_. If Mortgagor (i) shall make an assignment for the benefit of creditors, or (ii) shall institute any proceeding seeking (A) relief on its behalf as debtor, or (B) adjudication of Mortgagor as a bankrupt or insolvent, or (C) reorganization, arrangement, adjustment, winding up, liquidation, dissolution or composition of Mortgagor or Mortgagor's debts under any law relating to bankruptcy, insolvency or reorganization or relief of debtors, or (D) appointment of a receiver, trustee, conservator, custodian or other similar official for Mortgagor or the Mortgaged Property or any part thereof or of any other substantial part of Mortgagor's property, or (iii) shall consent by answer or otherwise to the institution of any such proceeding against Mortgagor, or (iv) shall (if a corporation or other entity having directors or shareholders) take by itself, or by its directors or shareholders, any action for the purpose of any of the foregoing; or

(m) _Involuntary Adverse Financial Events_. If any proceeding is instituted against Mortgagor seeking (i) to have an order for relief entered against Mortgagor as debtor or to adjudicate Mortgagor a bankrupt or insolvent, or (ii) reorganization, arrangement, adjustment,

winding-up, liquidation, dissolution or composition of Mortgagor or Mortgagor's debts under any law relating to bankruptcy, insolvency or reorganization or relief of debtors, or (iii) appointment of a receiver, trustee, conservator, custodian or other similar official for Mortgagor or the Mortgaged Property or any portion thereof or any other substantial part of Mortgagor's property, that either (A) results, without Mortgagor's consent or acquiescence, in any such entry of an order for relief, adjudication of bankruptcy or insolvency or issuance or entry of any other order having a similar effect or (B) remains undismissed for thirty days; or

(n) <u>Appointment of Trustee, Etc.</u> If a trustee, receiver, conservator, custodian or other similar official is appointed, without the consent or acquiescence of Mortgagor, for Mortgagor or the Mortgaged Property or any portion thereof or any other substantial part of Mortgagor's property, which appointment is not vacated within thirty (30) days; or

(o) <u>Changes in Mortgage Taxation</u>. If subsequent to the date of this Mortgage the law of the state in which the Premises are situated is changed to Mortgagee's detriment by statutory enactment, judicial decision, regulation or otherwise, so as (i) to deduct from the value of land for the purpose of taxation (for state, county, municipal or other purpose) any lien or charge thereon, or (ii) to change the taxation of deeds of trust, mortgages or debts secured by land or the manner of collecting any such taxation; or

(p) <u>Final Judgment</u>. If a final judgment is entered against Mortgagor, and, within thirty (30) days after its entry, such judgment has not been discharged or execution thereof stayed pending appeal, or if, within thirty (30) days after the expiration of any such stay, such judgment has not been discharged; or

(q) <u>Certain Taxes</u>. If it is or becomes illegal for Mortgagor to pay any tax required to be paid by Mortgagor pursuant to Section 1.7 or if Mortgagor's payment of such tax would violate any Requirement; or

(r) <u>Prohibited Transfer</u>. If a transaction prohibited by Section 1.18 occurs without Mortgagee's prior written consent; or

(s) <u>Other Instruments</u>. If Mortgagor fails to perform, comply with or discharge any agreement, obligation or undertaking created or agreed to by Mortgagor in any Loan Document and any applicable cure periods expire; if any Principal of Mortgagor or Guarantor fails to perform, comply with or discharge any agreement, obligation or undertaking created or agreed to by such Principal of Mortgagor or Guarantor in any Loan Document and any applicable cure periods expire; or if any event or circumstance described in clause 1.7(c)(iii) occurs; or

(t) <u>Leases</u>. If Mortgagor leases all or any part of the Mortgaged Property in violation of Section 1.15 of this Mortgage or effectuates any change with respect to a Lease in violation of said section; or

(u) <u>Management of Mortgaged Property</u>. If the Mortgaged Property ceases to be managed by Mortgagor or such other person or entity as may be approved by Mortgagee in writing; or

(v) <u>Principal of Mortgagor; Guarantor</u>. If any act, circumstance or event described in paragraphs (k) through (n) or (p) is taken by or occurs with respect to any Principal(s) of Mortgagor or any Guarantor or the property of any such person or entity (each of the foregoing, an "Insolvency Event").

2.2. <u>Effect of Event of Default</u>. Upon and after the occurrence of an Event of Default, Mortgagee shall be entitled to all of the rights and remedies set forth below. In those instances in which Mortgagee is entitled to take action with respect to the subject matter of this Article 2, such action may be taken by Mortgagee personally or on Mortgagor's behalf by its agents or attorneys and, in any such instance, with or without entry upon the Mortgaged Property. All expenses incurred and advances made by Mortgagee or by any such agents or attorneys in taking any such action shall be deemed to be for the account of Mortgagor and shall be repaid to Mortgagee together with interest thereon computed at the Involuntary Rate from the date each such expense is incurred or advance is made until the date Mortgagee has received repayment in its entirety thereof.

(a) <u>Automatic Acceleration of Note</u>. If the Event of Default is one described in paragraphs (l), (m) or (n) of Section 2.1, then the entire principal of the Note then outstanding, all accrued and unpaid interest thereon, Prepayment Charge and all other indebtedness secured by this Mortgage shall automatically become immediately due and payable.

(b) <u>Optional Acceleration of Note</u>. If the Event of Default is one described in any paragraph of Section 2.1 other than those paragraphs of Section 2.1 referred to in the preceding paragraph (a), then Mortgagee, by written notice to Mortgagor, may declare the entire principal of the Note then outstanding, all accrued and unpaid interest thereon, Prepayment Charge and all other indebtedness secured hereby to be due and payable immediately. Upon any such declaration the same shall become immediately due and payable, notwithstanding anything to the contrary in any Loan Document.

(c) <u>Entry upon Mortgaged Property</u>. Without notice to Mortgagor or anyone else, Mortgagee may (i) enter into and upon the Mortgaged Property and take possession thereof by force, summary proceeding, ejectment or otherwise and exclude therefrom Mortgagor, Mortgagor's employees and agents and all other persons, (ii) hold, use, operate, manage, maintain and control the Mortgaged Property and conduct the business thereof on such terms as Mortgagee shall deem proper, (iii) collect and receive all Rents including, without limitation, those past due (instituting, at Mortgagee's election, proceedings in furtherance of such collection), (iv) apply the Rents as hereinafter provided, (v) amend, modify and terminate then existing Leases of the Mortgaged Property or any portion thereof and, in the name of Mortgagor, enter into Leases of all or any portion of the Mortgaged Property, (vi) complete the construction of the Improvements, and in the course of such completion make such changes in the contemplated Improvements as Mortgagee may deem desirable, (vii) make all necessary or proper repairs, renewals and replacements and such alterations, additions, improvements and betterments as Mortgagee may deem advisable, and (viii) generally do everything as fully and effectually as if Mortgagee were the absolute owner of the Mortgaged Property. Mortgagor shall apply the Rents (A) first, to paying the costs and expenses incurred by Mortgagee in taking actions pursuant to this paragraph (including, without limitation, cost and expenses incurred in furtherance of the rights, remedies and powers specifically set forth

above and those incurred in order to insure the Mortgaged Property, pay Impositions and pay reasonable compensation for the services of Mortgagee and its employees, attorneys and agents), and (B) second, to payment of the principal of the Note then outstanding, all accrued but unpaid interest thereon, Prepayment Charge, and all other indebtedness secured by this Mortgage or by any other Loan Document. Mortgagor hereby consents to the exercise by Mortgagee of the rights, remedies and powers conferred upon Mortgagee in this paragraph, provided, however, that (x) Mortgagee shall under no circumstances have any obligation to undertake any act or do anything pursuant to this paragraph and (y) no entry in or upon the Mortgaged Property or taking possession thereof or any other action or omission of Mortgagee hereunder shall make Mortgagee a "mortgagee in possession" (unless Mortgagee expressly elects such status in writing) or create any liability on the part of Mortgagee to Mortgagor or to any lessee or other party holding under or claiming through Mortgagor (whether for trespass, eviction, inconvenience, annoyance, disturbance, loss of business or otherwise) except if attributable to the willful misconduct or bad faith of Mortgagee. In furtherance of all of the foregoing, Mortgagor hereby irrevocably and unconditionally appoints Mortgagee as Mortgagor's true and lawful attorney-in-fact, coupled with an interest, in Mortgagor's name and stead, with full power of substitution to act pursuant to the provisions of this paragraph.

(d) <u>Sale of Mortgaged Property</u>. Mortgagee may sell the Mortgaged Property and all estate, right, title and interest, claim and demand therein, and right of redemption thereof, at one or more sales as an entity or in parcels, in such manner, at such time and place, for such price and upon such other terms and after such notice thereof as Mortgagee may in its sole discretion determine, or as may be required by law. Mortgagee may from time to time adjourn any such sale by announcement at the time and place appointed for such sale, as same may previously have been adjourned.

(e) <u>Foreclosure</u>. Mortgagee may institute proceedings for the complete or partial foreclosure of this Mortgage against the mortgaged premises described in Schedule A.

(f) <u>Rights as Secured Party</u>. Mortgagee may exercise such rights and remedies, whether at law, in equity or by statute (including, without limitation, the Uniform Commercial Code), as are available to Mortgagee as a secured party under this Mortgage with respect to the Chattels, including, without limitation, the right to take possession of the Chattels, to maintain and preserve the same and to cause any of the Chattels to be sold at any one or more public or private sales as permitted by applicable law. Any person, including both Mortgagee and Mortgagor, shall be eligible to purchase any portion or all of the Chattels thus offered for sale. Any and all expenses incurred by Mortgagee in connection with taking possession of the Chattels and maintaining and preserving the same and otherwise preparing for sale, as well as in the conduct of the sale, such as the fees and expenses of Mortgagee's attorneys, shall be deemed to be for the account of Mortgagor and shall be repaid to Mortgagee. Mortgagor, upon Mortgagee's demand, shall assemble the Chattels and make them available to Mortgagee at such place(s) as Mortgagee may designate. Mortgagee shall give Mortgagor at least five days' prior written notice of the time and place of any public sale or other disposition of the Chattels or of the time at or after which Mortgagee intends to make any private sale or other disposition (any such notice for all purposes to be deemed reasonable notice to Mortgagor).

(g) <u>Insurance</u>. In the event that Mortgagor shall permit the insurance coverage to lapse or in the event a notice of cancellation insurance is sent to the Mortgagee and Mortgage shall reinstate or replace said insurance there shall be a service fee of $250.00 chargeable to the Mortgagee.

(h) <u>Dishonored Checks.</u>  In the event any payment made hereunder by check is not honored by Mortgagor's bank for any reason whatsoever, Mortgagee may charge and Mortgagor shall pay a reasonable sum to reimburse Mortgagor its time and expense in administrative handling, together with a service charge of $250.00, which sums are in addition to all other charges set forth in this Mortgage. The replacement of such dishonored check shall be by certified or official bank check.

(i) <u>Other Remedies</u>. Supplementing the foregoing provisions of this Section 2.2, Mortgagee may take such other steps as Mortgagee may elect to protect and enforce its rights, whether by action, suit or proceeding in equity or at law for the specific performance of any covenant, condition or agreement set forth in the Note, this Mortgage or in any other Loan Document, or in aid of the execution of any power herein granted to Mortgagee, or for any foreclosure hereunder, or for the enforcement of any other appropriate legal or equitable right or remedy.

2.3.   <u>Foreclosure Sale Implementation</u>.

(a) <u>Deeds, Etc.</u>  To effectuate any sale(s) made under or by virtue of this Article 2, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale (any such sale, an "<u>Article 2 Sale</u>"), Mortgagor, Mortgagee, or an officer of any court empowered to do so shall execute and deliver (i) to the accepted purchaser or purchasers assigning and transferring all estate, right, title, interest, claim and demand in and to the property and rights sold and (ii) to the appropriate Governmental Authority any affidavit(s) or other instrument(s) required pursuant to any Requirement(s). In furtherance of such purpose, Mortgagor hereby irrevocably and unconditionally appoints Mortgagee as Mortgagor's true and lawful attorney-in-fact, coupled with an interest, in Mortgagor's name and stead, with full power of substitution, to execute and deliver such instrument(s). Mortgagor hereby ratifies and confirms all that Mortgagee, in its capacity as said attorney-in-fact, or such substitute(s) shall lawfully do pursuant to this Section 2.3(a). Notwithstanding the foregoing, Mortgagor, if so requested by Mortgagee or any purchaser, shall ratify and confirm any such sale or sales by executing and delivering to Mortgagee or to such purchaser all such instruments as may be designated by the requesting party. Any such sale or sales shall operate to divest all the estate, right, title, interest, claim and demand whatsoever, whether at law or in equity, of Mortgagor in and to the property and rights so sold, and shall be a perpetual bar, both at law and in equity, against Mortgagor and against any and all persons claiming or who may claim by, from, through or under Mortgagor.

(b) <u>Acceleration Upon Sale</u>. In the event of any Article 2 Sale, then, notwithstanding anything to the contrary set forth in any Loan Document, the entire principal of the Note then outstanding, all accrued and unpaid interest thereon, Prepayment Charge, and all other indebtedness secured by this Mortgage shall immediately become due and payable.

-31-

(c) <u>Application of Proceeds</u>. The proceeds of any Article 2 Sale, together with any other sums that Mortgagee may then hold under any provision of this Mortgage, shall be applied in the following order of priority:

(i) <u>Sale Costs, Etc.</u> To the payment of the costs and expenses incurred in connection with such sale, including, without limitation, the costs and expenses (A) incurred by Mortgagee prior thereto in taking possession of, and maintaining and preserving, the Mortgaged Property or any portion thereof and paying Impositions with respect thereto (other than Impositions subject to which the Mortgaged Property might have been sold), (B) of any judicial proceedings wherein or pursuant to which such sale might have been made, (C) of any receiver(s) appointed with respect to the Mortgaged Property or any portion thereof, (D) incurred in order to comply with Requirements applicable to such sale and (E) of paying reasonable compensation to Mortgagee, its employees, agents and attorneys.

(ii) <u>Principal, Prepayment Charge and Interest</u>. To the payment of the entire principal of the Note then outstanding, all accrued and unpaid interest thereon (whether accruing prior or subsequent to the date of default) and Prepayment Charge.

(iii) <u>Other Sums Due</u>. To the payment of any other sums required to be paid by Mortgagor pursuant to any provision of any Loan Document.

(iv) <u>Application of Surplus</u>. To the payment of the surplus, if any, to whosoever may be lawfully entitled to receive the same.

(d)    <u>Bids by Mortgagee</u>. At any Article 2 Sale, Mortgagee may bid for and acquire the Mortgaged Property or any part thereof and in lieu of paying cash therefor may make settlement for the purchase price by crediting upon the indebtedness of Mortgagor secured by this Mortgage the net sales price after deducting therefrom the costs and expenses of the sale and all other costs or expenses attributable to Mortgagor's default under this Mortgage and Mortgagee's exercise of its rights, powers and remedies under this Mortgage.

2.4.    <u>Collection of Debt</u>.

(a) <u>Payments Due upon Acceleration</u>. In the event that the indebtedness secured by this Mortgage shall become due and payable in accordance with the provisions of this Mortgage and Mortgagor shall fail forthwith to pay such amounts to Mortgagee, Mortgagee shall be entitled and empowered to institute actions or proceedings at law or in equity for the collection of the sums so due and unpaid, and may prosecute any such actions or proceedings to judgment or final decree, and may enforce any such judgment or final decree against Mortgagor and collect, out of the Mortgaged Property and other property of Mortgagor wherever situated, in any manner provided by law, moneys adjudged or decreed to be payable.

(b) <u>Effect of Foreclosure, Etc.</u> Mortgagee shall be entitled to recover judgment as aforesaid either before or after or during the pendency of any proceedings for the enforcement of the provisions of this Mortgage; and the right of Mortgagee to recover such judgment shall not be affected by any entry or sale hereunder, or by the exercise of any other right, power or remedy for

-32-

the enforcement of the provisions of this Mortgage or the foreclosure of the lien hereof; and in the event of a sale of the Mortgaged Property and of the application of the proceeds of sale, as in this Mortgage provided, to the payment of the debt hereby secured, Mortgagee shall be entitled to enforce payment of, and to receive all amounts then remaining due and unpaid upon, the Note and to enforce payment of all other charges, payments and costs due under this Mortgage, and shall be entitled to recover judgment for any portion of the debt remaining unpaid, with interest at the maximum rate permitted by law. If any case shall be commenced against Mortgagor under any applicable insolvency, bankruptcy or any similar law now or hereafter or any proceedings for Mortgagor's reorganization or involving the liquidation of Mortgagor's assets, then Mortgagee shall be entitled to prove the whole amount of principal, Prepayment Charge and interest due upon the Note to the full amount thereof, and all other payments, charges and costs due under this Mortgage (including, without limitation, the fees and expenses of Mortgagee's attorneys in connection with such proceedings), without deducting therefrom any proceeds obtained from the sale of the whole or any part of the Mortgaged Property, provided, however, that in no case shall Mortgagee receive a greater amount than such principal, Prepayment Charge and interest and such other payments, charges and costs from the aggregate amount of the proceeds of the sale of the Mortgaged Property and the distribution from the estate of Mortgagor.

(c) _Effect of Judgment_.  No recovery of any judgment by Mortgagee and no levy of any execution under any judgment upon the Mortgaged Property or any part thereof or upon any other property of Mortgagor shall affect in any manner or to any extent the lien of this Mortgage upon the Mortgaged Property or any part thereof or any liens, rights, powers or remedies of Mortgagee hereunder, but such liens, rights, powers and remedies of Mortgagee shall continue unimpaired as before.

(d)    _Application of Sums Collected_.  Any moneys thus collected by Mortgagee under this Section 2.4 shall be applied by Mortgagee in accordance with the provisions of paragraph (c) of Section 2.3.

(e)    _Legal Proceedings_.  Mortgagor unconditionally and irrevocably agrees that any action or proceeding against Mortgagor with respect to the Loan or for the recognition or enforcement of any judgment rendered in any such action or proceeding may be brought in the United States Courts for the Southern District of New York, or in the courts of the State of New York, as Mortgagee may elect, and by executing and delivering this Mortgage, Mortgagor unconditionally and irrevocably accepts and submits to the non-exclusive jurisdiction of each of the aforesaid courts _in persona_ generally with respect to any such action or proceeding for itself and in respect of its properties. Mortgagor further agrees that final judgment against it in any action or proceeding shall be conclusive and may be enforced in any other jurisdiction, by suit on the judgment, a certified or exemplified copy of which shall be conclusive evidence of the fact and of the amount of Mortgagor's indebtedness.

2.5.    _Appointment of Receiver_.  After the occurrence of any Event of Default and during its continuance, whether incidental to any proceedings to foreclose this Mortgage or to enforce the specific performance hereof or to any other judicial proceeding to enforce any right of Mortgagee, or otherwise, Mortgagee shall be entitled, as a matter of right, without the giving of notice to any other party and without regard to the adequacy or inadequacy of any security for the

Mortgage indebtedness, either before or after declaring the unpaid principal of the Note to be due and payable, to the appointment of a receiver or receivers of the Mortgaged Property and of all the Rents thereof. Mortgagor hereby irrevocably and unconditionally consents to the appointment of such receiver or receivers (and to the exercise by such receiver or receivers of such powers as may be requested by Mortgagee of the court that is empowered to make such appointment), waives any and all defenses to such appointment and agrees not to oppose Mortgagor's application therefor.

2.6.    _Possession by Mortgagee_. Notwithstanding the appointment of any receiver, liquidator or trustee of Mortgagor, or of any of Mortgagor's property, or of the Mortgaged Property or any part thereof, Mortgagee shall be entitled to retain possession and control of all property now or hereafter held under this Mortgage.

2.7.    _Remedies Cumulative_. No right or remedy of Mortgagee is intended to be exclusive of any other right or remedy specified herein, in any other Loan Document or available to Mortgagee at law or in equity. All such rights and remedies shall be cumulative and concurrent and, at Mortgagee's option, may be pursued singularly, successively or together and may be exercised as often as occasion therefor shall arise. No delay or failure of Mortgagee to exercise any right, power or remedy hereunder or under any other Loan Document shall impair any such right, power or remedy or shall be construed to be a waiver thereof or of any Event of Default, and Mortgagor shall not thereby be relieved of its obligations. Mortgagee shall be deemed to have waived any such right, power or remedy only if such waiver is expressly set forth in a written instrument duly executed by an authorized representative of Mortgagee. No waiver of any breach shall constitute a waiver of any other then existing or subsequent breach.

2.8.    _Right to Withdraw Proceeding, Etc._ Any action, suit or proceeding brought by Mortgagee pursuant to any of the terms of this Mortgage or otherwise and any claim made by Mortgagee hereunder may be compromised, settled, withdrawn, abandoned or otherwise dealt with by Mortgagee without any notice to, agreement or approval of, or consent by, Mortgagor and without any liability of Mortgagee to Mortgagor.

2.9.    _Waiver_. To the fullest extent permitted by law and with full awareness of the consequences thereof, Mortgagor hereby unconditionally and irrevocably (a) waives and relinquishes the benefit of, and releases all rights of Mortgagor under, all laws now or hereafter in force providing for any appraisement or valuation before sale of the Mortgaged Property or any portion thereof, any stay of execution or extension of the time for the enforcement of the collection of the indebtedness secured by this Mortgage, any extension of a period of redemption from any sale in furtherance of the collection of said indebtedness, and any marshalling of the assets of Mortgagor (including, without limitation, the Mortgaged Property), and (b) agrees that Mortgagor shall not at any time insist upon, plead, claim or take the benefit or advantage of any law now or hereafter in force providing for any of the foregoing. In addition, to the fullest extent permitted by law and with full awareness of the consequences thereof, Mortgagor hereby waives and relinquishes the right to assert any defense based upon laws applicable to sureties and guarantors.

2.10.    _Use and Occupancy of Mortgaged Property_. During the continuance of any Event of Default and pending the exercise by Mortgagee of its right to exclude Mortgagor from all or any part of the Mortgaged Property, Mortgagor agrees to pay to Mortgagee the fair and reasonable rental

value for the use and occupancy of the Mortgaged Property or any part thereof that is in Mortgagor's possession for such period and, upon default of any such payment, shall vacate and surrender possession of the Mortgaged Property to Mortgagee or to a receiver, if any, and in default thereof Mortgagor may be evicted by summary action or proceeding for the recovery of possession of premises for nonpayment of rent.

2.11.    Mortgagee's Attorneys' and Inspection Fees.  Mortgagor shall upon demand pay any and all costs, expenses, and attorneys' fees incurred by Mortgagee in connection with (a) enforcing, or attempting to enforce, Mortgagee's rights under the Loan Documents; (b) obtaining legal advice regarding Mortgagee's available legal alternatives and rights under the Loan Documents; (c) representation of Mortgagee's interest in any action or proceeding that relates to the Loan, Mortgagor or the Mortgaged Property and (d) the inspection of the Mortgaged Property at the rate of $500.00 per inspection

2.12.    Effect of Mortgagor's Tender.  If, after the occurrence of an Event of Default but before the sale of the Mortgaged Property, Mortgagor tenders to Mortgagee payment of the amount necessary to pay all sums then due hereunder, then such tender shall constitute a voluntary prepayment of the Note, and Mortgagor shall pay Mortgagee, together with all other sums then due, Prepayment Charge computed in accordance with the Note.

ARTICLE 3

Representations and Warranties

Mortgagor represents and warrants to Mortgagee that, as of the date of the delivery of this Mortgage and as of each date as  of which Mortgagor is required to make any payment under the Note:

3.1.    Title, Etc.  Mortgagor has good and marketable title to an indefeasible fee estate in the Mortgaged Property, subject to no lien, charge or encumbrance except (a) matters listed as typewritten exceptions to title in Schedule B of Mortgagee's title policy issued by The Stewart Title Insurance Company, as agent for Fidelity Title Insurance pursuant to title order number 62699, insuring the lien of this Mortgage; and (b) Leases that comply with this Mortgage and with the Lease Assignment. Upon recordation, this Mortgage shall impose upon such of the Mortgaged Property as constitutes real estate a first priority lien.  Mortgagor owns the Chattels and all other Mortgaged Property free and clear of liens and claims other than those set forth in said typewritten exceptions.

3.2.    Status of Mortgagor.  Mortgagor is a corporation duly organized and validly existing under the laws of the State of New York and has all requisite power and authority to own and operate the Mortgaged Property, to carry on Mortgagor's business as now conducted and proposed to be conducted, and to execute, deliver and perform the Loan Documents to which it is a party.

3.3.    Due Authorization, Etc.  Mortgagor has taken all necessary action to authorize the execution, delivery and performance by it of each of the Loan Documents to which it is a party. Such Loan Documents have been duly executed and delivered and constitute legal, valid and binding

obligations of Mortgagor, enforceable in accordance with their terms.

3.4.    No Violation.  Neither the execution, delivery or recordation of this Mortgage, nor the compliance by Mortgagor with the terms and provisions hereof, nor the consummation of the transactions contemplated by the Loan Documents will (a) contravene any Requirement, (b) conflict, or be inconsistent with, or result in any breach of, or constitute a default under, any term or provision of any contract, agreement, lease, indenture, mortgage or the like applicable to Mortgagor or by which Mortgagor or Mortgagor's properties or assets (including, without limitation, the Mortgaged Property) are bound or affected or (c) violate any term or provision of any of Mortgagor's governing documents.

3.5.    Pending Litigation.  There is no action, suit, proceeding or investigation pending or threatened, or any basis therefor known to Mortgagor, that questions the validity of any of the Loan Documents or any action heretofore taken or to be taken pursuant thereto or that in any way affects the Mortgaged Property or any means of access thereto.  No notice has been given by any Governmental Authority of any proceeding to condemn, purchase or otherwise acquire the Mortgaged Property or any part thereof or interest therein and, to the best of Mortgagor's knowledge, no such proceeding is contemplated.

3.6.    Compliance with Requirements, Etc.  Except as expressly set forth in the Environmental Report, and in the Certification, Undertaking and Indemnity dated the date hereof delivered by Mortgagor to Mortgagee with respect to municipal departmental violations affecting the Mortgaged Property, Mortgagor is in full compliance with all Requirements and Restrictions. Neither the Mortgaged Property nor any part thereof was acquired with the proceeds from any transaction or activity that would cause the Mortgaged Property or any such part to be subject to forfeiture under any Requirement or Restriction.  Furthermore, Mortgagor has not been responsible for, and has no knowledge of, any action or omission by any person or entity that would cause the Mortgaged Property or any such part to be subject to forfeiture.

3.7.    Rent Roll.  Mortgagor has heretofore delivered to Mortgagee one or more rent rolls listing the Rents payable under all Leases.  All Rents shown in the rent roll(s) are legal and enforceable Rents and are in compliance with all applicable Requirements.

3.8.    Easements, Etc.  Mortgagor has all easements, including those for use, maintenance, and access (by pedestrians, automobiles and trucks) necessary, appropriate, or convenient for the full and proper operation, repair, maintenance, occupancy and use of every portion of the Mortgaged Property.  The Mortgaged Property is adequately served by all utilities necessary, appropriate, or convenient for the full and proper operation, repair, maintenance, occupancy and use of every portion of the Mortgaged Property.

3.9.    No Misrepresentations.  Neither this Mortgage, any other Loan Document, nor any other document or certificate furnished to Mortgagee or to Mortgagee's attorneys in connection with the transactions contemplated hereby or thereby contains any untrue statement of a material fact or omits to state a material fact necessary in order to make the statements contained therein or herein not misleading.  All certifications, recitals, representations and warranties contained in the Loan Documents are true and correct in all material respects.

3.10.    Governmental Approvals. All Authorizations necessary or appropriate to permit the use and occupancy of the Mortgaged Property and which are required to be obtained from any Governmental Authority have been duly obtained and are in full force and effect.

3.11.    Approvals of Loan Documents. No consent, approval or authorization of, or registration, declaration or filing with, any Governmental Authority is required in connection with the valid execution, delivery and performance of the Loan Documents or the carrying out of any of the transactions contemplated thereby.

3.12.    Other Beneficiaries. The representations and warranties contained in the Loan Documents shall inure to the benefit of any purchaser at a foreclosure sale or other grantee named in a deed delivered in respect of the Mortgaged Property.

3.13.    Federal Law. The proceeds of the Loan are not being and will not be used, directly or indirectly, for the purpose of "purchasing" or "carrying" any "margin stock" in contravention of Regulation U or X promulgated by the Board of Governors of the Federal Reserve System. Mortgagor is incurring the Loan for business purposes only, and not for personal, family or household purposes.    Neither the Premises nor any part thereof constitutes or is intended to constitute the personal residence of Mortgagor or any Principal of Mortgagor at any time while the portion of the Premises so used is encumbered by this Mortgage. Mortgagor is a United States person, and is not a foreign person, as defined in the Foreign Investment in Real Property Tax Act.

3.14.    Hazardous Substances.    Without limiting the generality of any other representation or warranty contained in this Mortgage, except as expressly set forth in the Environmental Report, the Mortgaged Property and the existing uses thereof comply and, to the best of Mortgagor's knowledge, at all times have complied in all respects with all Environmental Laws in effect on the date of this Mortgage; all Environmental Authorizations have been duly issued or granted and are in full force and effect; and except as expressly set forth in the Environmental Report, Mortgagor is not, and at no time since Mortgagor acquired ownership or possession of the Mortgaged Property or any portion thereof has Mortgagor been, in violation of any Environmental Law with respect to the Mortgaged Property. Without limiting the generality of the foregoing:

(a)    No Hazardous Substances are being, or are intended or threatened to be, and, to the best of Mortgagor's knowledge, no Hazardous Substances have ever been, used, received, handled, generated, manufactured, produced, processed, treated, stored, released, placed, spilled, discharged, disposed of or dispersed at, or otherwise caused to become situated, at, on, under or about the Mortgaged Property, and no portion of the Mortgaged Property has been used at any time as a landfill or as a waste treatment, storage or disposal facility;

(b)    None of the Improvements contains (and, to the best of Mortgagor's knowledge, none of the Improvements which at any time were a part of, or were situated at, on or under the Mortgaged Property contained) any Hazardous Substances;

(c)    No underground storage tanks or other underground storage facilities are, or, to the best of Mortgagor's knowledge, have ever been, situated on or under the Mortgaged Property;

(d)  To the best of Mortgagor's knowledge, (i) the ambient air quality at the Mortgaged Property complies with the requirements of all Environmental Laws and (ii) the present levels of radon, formaldehyde, asbestos and all other Hazardous Substances, to the extent any such Hazardous Substances exist at, on, under or about the Mortgaged Property, are within the limits prescribed by all Environmental Laws;

(e)    Neither the Mortgaged Property nor, to the best of Mortgagor's knowledge, any land which adjoins any portion of the Mortgaged Property, contains or is affected by any dam, well, reservoir, inland wetland, watercourse or water discharge; and

(f) Mortgagor has not received nor had served upon it any summons, citation, directive, order, Notice or other communication, oral or written, which (i) claims or alleges any failure to comply with any Environmental Law with respect to the Mortgaged Property or (ii) contains any statement(s) or fact(s) which, if true, would signify that any representation, warranty or statement contained in this Mortgage is other than complete and correct.  With respect to the ownership, use, operation or maintenance of the Mortgaged Property or the conduct of Mortgagor's business thereat, (y) no writ, injunction, decree, order or judgment is outstanding and (z) no suit, claim, action, proceeding or investigation has been instituted or filed with respect to any Environmental Law (and, to the best of Mortgagor's knowledge, no basis for any of the foregoing exists).  No lien has been filed against or imposed upon any of the Mortgaged Property with respect to any Environmental Law.

Each of the representations and warranties contained in this Section 3.14 shall be deemed made by Mortgagor with respect to all other land, together with the buildings, structures, equipment and other improvements thereon, in whole or in part owned, leased, operated or occupied by Mortgagor.

3.15.    Split Tax Lots.  The tax lot or lots that contain the Mortgaged Property include no real property other than the Mortgaged Property and constitute one or more discrete, salable parcels.

3.16 Anti-Terrorism Laws.

(a) General.  Borrower is not in violation of any Anti-Terrorism Law or engages in or conspires to engage in any transaction that evades or avoids, or has the purpose of evading or avoiding, or attempts to violate, any of the prohibitions set forth in any Anti-Terrorism Law.  For the purposes hereof, Anti-Terrorism Laws" shall mean any laws relating to terrorism or money laundering, including Executive Order No. 13224, the USA Patriot Act, the laws comprising or implementing the Bank Secrecy Act, and the laws administered by the United States Treasury Department's Office of Foreign Asset Control (as any of the foregoing laws may from time to time be amended, renewed, extended, or replaced

(b) Executive Order No. 13224.  Borrower is not any of the following (each, a "Blocked Person"):

1.  a Person that is listed in the annex to, or is otherwise subject to the provisions of, Executive Order No. 13224;

2.  a Person owned or controlled by, or acting for or on behalf of, any Person that is listed in the annex to, or is otherwise subject to the provisions of, Executive Order No. 13224;

3.  a Person or entity with which any Lender is prohibited from dealing or otherwise engaging in any transaction by any Anti-Terrorism Law;

4.  a Person or entity that commits, threatens or conspires to commit or supports "terrorism" as defined in Executive Order No. 13224;

5.  a Person or entity that is named as a "specially designated national" on the most current list published by the U.S. Treasury Department Office of Foreign Asset Control at its official website or any replacement website or other replacement official publication of such list, or

6.  a Person or entity who is affiliated or associated with a person or entity listed above.

(c)    Blocked Person or Transactions. Borrower does not (i) conduct any business or engage in making or receiving any contribution of funds, goods or services to or for the benefit of any Blocked Person, or (ii) deals in, or otherwise engages in any transaction relating to, any property or interests in property blocked pursuant to Executive Order No. 13224.

## ARTICLE 4

### Miscellaneous

4.1.    Partial Invalidity. If any provision(s) of any Loan Document are held to be invalid, illegal or unenforceable in any respect, then such invalidity, illegality or unenforceability shall not affect any other provision of such instrument(s) and such instrument(s) shall instead be construed as if it or they had never contained such invalid, illegal or unenforceable provision.

4.2.    Notices. All notices hereunder shall be in writing and shall be deemed sufficiently given or served for all purposes when delivered personally or sent by mail to any party hereto at such party's address above, or at such other address of which such party shall have notified the other party in writing. Any notice given by an attorney representing or purporting to represent Mortgagee shall constitute notice by Mortgagee if such attorney is in fact authorized to act on behalf of Mortgagee. Upon receipt of any notice from an attorney purporting to act for Mortgagee, Mortgagor shall have the right, by notice to Mortgagee in compliance with this Mortgage, to require Mortgagee to deliver prompt written proof of the attorney's authority. Such a request, if promptly complied with by Mortgagee, shall not delay or suspend the effectiveness of Mortgagee's notice to Mortgagor.

4.3.    Waiver of Notice. Whenever in this Mortgage the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the person or persons entitled to receive such notice.

4.4.    Successors and Assigns. All the grants, covenants, terms, provisions and conditions of this Mortgage shall run with the land, shall apply to and bind the successors and assigns of Mortgagor and all subsequent owners, encumbrancers and tenants of the Mortgaged Property and shall inure to the benefit of the successors and assigns of Mortgagee and all subsequent holders of this Mortgage. Nothing in this Section 4.4 limits the prohibitions of Section 1.18. Mortgagee may freely assign any or all of Mortgagee's rights and obligations under the Loan Documents, including without limitation by granting "participations" to other parties.

4.5.    Usury Savings. Nothing in any Loan Document shall require the payment or permit the collection by Mortgagee of interest in an amount exceeding the maximum amount permitted under applicable law in commercial mortgage loan transactions between parties of the character of the parties hereto (the "Maximum Interest Amount"). Mortgagor shall not be obligated to pay to Mortgagee any interest in excess of the Maximum Interest Amount, and the amount of interest payable to Mortgagee under the Loan Documents shall under no circumstance be deemed to exceed the Maximum Interest Amount. To the extent that any payment made to Mortgagee under the Loan Documents would cause the amount of interest charged to exceed the Maximum Interest Amount, such payment shall be deemed a prepayment of principal as to which no Prepayment Charge or notice shall be required, notwithstanding anything to the contrary in any Loan Document, or, if the amount of excess interest exceeds the unpaid principal balance of the Note, such excess shall be refunded to Mortgagor.

4.6.    Counterparts. This Mortgage may be executed in any number of counterparts. Each such counterpart shall for all purposes be deemed an original. All such counterparts shall together constitute but one and the same mortgage.

4.7.    Governing Law. This Mortgage shall be construed and enforced in accordance with, and shall be governed by, the laws of the state in which the Premises are situated.

4.8.    Written Amendments. This Mortgage may be amended, discharged or terminated only by a written instrument executed by Mortgagee and Mortgagor.

4.9.    Actions, Approvals and Determinations. Wherever in this Mortgage it is provided that (a) as a condition precedent to Mortgagor's undertaking certain action, Mortgagor shall be required to obtain Mortgagee's consent or approval or (b) Mortgagee shall have the right to make a determination (including, without limitation, a determination as to whether a matter is satisfactory to Mortgagee), or if Mortgagor shall request that Mortgagee take any action, then, unless expressly provided to the contrary in the applicable provision of this Mortgage, the decision whether to grant such consent or approval or to take the requested action, or the determination in question, shall be in the sole and exclusive discretion of Mortgagee and shall be final and conclusive. Wherever in this Mortgage it is stated that any consent or approval shall not be unreasonably withheld or that a determination to be made by Mortgagee shall be subject to a specified standard, then, if a court of competent jurisdiction determines, without right to further appeal, that the consent or approval has been unreasonably withheld or that such specified standard has been met, the consent or approval shall be deemed granted or the standard shall be deemed met, as the case may be, and Mortgagee, at the request of Mortgagor, shall deliver to Mortgagor written confirmation thereof. The obtaining of such consent or approval or determination that such standard has been met shall be Mortgagor's sole

and exclusive remedy with respect to the subject matter of this section, and under no circumstance shall Mortgagee, Mortgagee's counsel or anyone else acting or purporting to act on Mortgagee's behalf have any liability (whether in damages or otherwise) with respect thereto. In any instance in which Mortgagor requests, or any Loan Document provides, that Mortgagee shall consider granting its consent or approval or making a determination or taking some other action, Mortgagor shall, upon demand, pay all costs, expenses and attorneys' fees incurred by Mortgagee in connection therewith.

4.10.   Receipt of Copy. Mortgagee has delivered to Mortgagor, without charge, a true and correct copy of this Mortgage. Mortgagor acknowledges receipt of same.

4.11.   Modifications, Releases, Etc. From time to time, Mortgagee may, at Mortgagee's option, without notice to or consent by Mortgagor, any Principal of Mortgagor, any Guarantor, any junior lienholder, or any other person, without liability and despite Mortgagor's breach under any of the Loan Documents, do any of the following: (a) release from the lien of this Mortgage any or all of the Mortgaged Property; (b) take or release other or additional security; (c) consent to any map, plat, restrictions, or easement affecting the Mortgaged Property; (d) join in any extension or subordination agreement; (e) alter, substitute or release any property securing the Loan; or (f) agree in writing with Mortgagor to modify the interest rate, amortization period, payment amount, or any other provision of the Note. No action described in the preceding sentence shall affect the lien or priority of lien of this Mortgage, Mortgagor's obligations under the Loan Documents (except as Mortgagee agrees in writing), or the obligations of any Guarantor or Principal of Mortgagor. Mortgagor shall pay Mortgagee a reasonable service charge, together with such title insurance premiums, attorneys' fees and other costs as Mortgagee may incur in connection with any such action. Mortgagee shall be under no obligation whatever to take any such actions.

4.12.   Construction. The Loan Documents shall be construed without regard to section headings, which are provided for convenience only and shall not be deemed to modify, or be used to interpret, the provisions of this Mortgage. References to a section are references to a section within this Mortgage unless otherwise expressly stated or necessarily implied by the context. The Loan Documents shall be construed without regard to any presumption or other rule requiring construction against the party which caused the Loan Documents to be drafted and, if the Premises are situated in New York State, without regard to New York Real Property Law Section 254. Nothing herein is intended or shall be deemed to create a joint venture or partnership between Mortgagor and Mortgagee or any relationship other than that of mortgagor and mortgagee.

4.13   Participation. Mortgagor acknowledges that Mortgagee and/or other participants in the Loan, if any, may transfer interests in the Loan to one or more other participants. All covenants, agreements, terms and conditions of the Loan Documents shall, in the event of any such participation, inure to the benefit of Mortgagee and each of such participants.

4.14   Time of the Essence. Time shall be of the essence for all obligations of the Mortgagor to be performed hereunder.

4.15   Acceptance of Payment and Waiver. Mortgagee by accepting payment of any sum secured hereby after its due date or after an Event of Default, or by making payment or taking any

action which, under the provisions hereof either Mortgagee is entitled, but not obligated, to make or take, or by forbearing from enforcing any of its rights, Mortgagee shall not be deemed to have waived its right to require payment from Mortgagor, or to demand action by Mortgagor, and to declare a default for Mortgagor's failure to do so.  No delay or failure of the Mortgagee to enforce any of the provisions herein or conduct, statement, or agreement of the Mortgagee which might otherwise alter, change or waive any of the provisions herein, shall waive or change any of the Mortgagee's rights hereunder or estop the Mortgagee from enforcing such rights, unless and only to such extent as such waiver or change shall be clearly expressed in writing signed by the Mortgagee.

## ARTICLE 5

### Transfer Taxes

5.1    Mortgagor covenants and agrees that in the event of a sale or other transfer (each, a "Transfer") of the Mortgaged Property, or any part thereof, including a sale by reason of foreclosure of this Mortgage, Mortgagor shall duly complete, execute and deliver to Mortgagee all forms and supporting documentation required by any taxing authority to estimate and fix the transfer taxes and other taxes, if any, payable by reason of the Transfer or recording of the deed evidencing the Transfer.

5.2    Mortgagor agrees to pay any tax (including, without limitation, any transfer tax imposed by any Governmental Authority) that may hereafter become due and payable with respect to any Transfer of the Mortgaged Property, or any part thereof, including a sale by reason of foreclosure of this Mortgage or any prior or subordinate mortgage, and in default thereof Mortgagee may at its option pay the same and the amount of such payment shall be added to the indebtedness secured hereby and, unless incurred in connection with a foreclosure of this Mortgage, be secured by this Mortgage.

5.3    Mortgagor hereby irrevocably and unconditionally constitutes and appoints Mortgagee as Mortgagor's true and lawful attorney in fact, coupled with an interest, in Mortgagor's name and stead, with full power of substitution to prepare and deliver any questionnaire, statement, affidavit or tax return in furtherance of any Transfer.  Mortgagee is authorized to utilize any information furnished to Mortgagee by Mortgagor that Mortgagee believes to be correct in the preparation of any such questionnaire, statement, affidavit or tax return.

5.4    If Mortgagor fails or refuses to pay a tax payable by Mortgagor after a Transfer by reason of a foreclosure of this Mortgage in accordance with this Article 5, the amount of the tax and any interest or penalty applicable thereto may, at the sole option of Mortgagee, be paid as an expense of the sale out of the proceeds of the mortgage foreclosure sale.

5.5    The provisions of this Article 5 shall survive any Transfer and the delivery of the deed affecting such Transfer.

Nothing in this Article 5 is intended (a) to expand any obligation of Mortgagee beyond that provided for by law; (b) to confer any benefit or rights upon any taxing authority; or (c) to limit Section 1.18.

ARTICLE 6

Additional Provisions

6.1.    Type of Property.    Mortgagor represents and warrants to Mortgagee that this Mortgage does not cover real property principally improved or to be improved by one or more structures containing in the aggregate more than six residential dwelling units, each having its own separate cooking facilities as the property described in Schedule A.

6.2.    Waiver of Jury Trial. MORTGAGOR AND MORTGAGEE WAIVE THE RIGHT TO A JURY TRIAL IN CONNECTION WITH ANY ACTION, SUIT OR PROCEEDING (INCLUDING ANY AND ALL COUNTERCLAIMS THERETO) THAT DIRECTLY OR INDIRECTLY RELATES TO THE SUBJECT MATTER OF THIS MORTGAGE.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

IN WITNESS WHEREOF, this Mortgage has been duly executed by Mortgagor and Mortgagee as of the date first above written.

NODINE REALTY CORPORATION

By_____

Name: Anastasios Gianopoulis
Title:  President


STATE OF NEW YORK          )
                           )    S.S.:
COUNTY OF WESTCHESTER      )


On the 25th day of January, 2005 before me, the undersigned, a Notary Public in said State, personally appeared Anastasios Gianopoulis, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

PETER L. TALLERICO, JR.
Notary Public, State of New York
No. 01TA6099087
Qualified in Westchester County
Commission Expires Sept. 22, 20___

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Town of Greenburgh, County of Westchester and State of New York, being more particularly bounded and described as follows:

BEGINNING at a point on the northwesterly side of Central Park Avenue, said point being distant 689.12 feet easterly as measured along the northwesterly side of Central Park Avenue from the easterly side of Hartsdale Avenue, as widened;

RUNNING THENCE North 45 degrees 20 minutes 30 seconds West, a distance of 45.29 feet to a point;

RUNNING THENCE North 46 degrees 00 minutes 20 seconds West, a distance of 54.71 feet to a point;

RUNNING THENCE North 47 degrees 47 minutes 10 seconds East, a distance of 78.03 feet to a point.

RUNNING THENCE South 46 degrees 00 minutes 20 seconds East, a distance of 54.71 feet to a point;

RUNNING THENCE South 41 degrees 09 minutes 00 seconds East, a distance of 45.29 feet to the northwesterly side of Central Park Avenue;

RUNNING THENCE along the northwesterly side of Central Park Avenue, South 47 degrees 47 minutes 10 seconds West, a distance of 78.03 feet to the point and place of BEGINNING.

SAID PREMISES being known as 57 North Central Avenue, Hartsdale, N.Y.

*Index No.* 06-15030    *Year* 2006

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER

RECEIVED

DEVELOPMENTAL STRATEGIES COMPANY, LLC

AUG 1 1 2006

Plaintiff,

TIMOTHY C. IDONI
COUNTY CLERK
COUNTY OF WESTCHESTER

- against -

NODINE REALTY CORPORATION, STATE OF NEW YORK, NEWELL FUNDING, LLC,
and "JOHN DOE #1 through "JOHN DOE #10", etc.

Defendants.

Summons and Verified Complaint

**ROBINOWITZ COHLAN DUBOW & DOHERTY LLP**

*Attorneys for*

Plaintiff

199 MAIN STREET
WHITE PLAINS, NEW YORK 10601
(914) 949-2826
FAX (914) 949-2822

*Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information and belief and reasonable inquiry, the contentions contained in the annexed document are not frivolous.*

*Dated:* ...........................................    Signature..................................................................

Print Signer's Name.....................................................

*Service of a copy of the within*                                                     *is hereby admitted.*

*Dated:*

                                                          .....................................................

*Attorney(s) for*

*PLEASE TAKE NOTICE*

☐    *that the within is a (certified) true copy of a*
NOTICE OF    *entered in the office of the clerk of the within named Court on*                     *20*
ENTRY

☐    *that an Order of which the within is a true copy will be presented for settlement to the*
NOTICE OF    *Hon.*                                      *one of the judges of the within named Court,*
SETTLEMENT    *at*
            *on*                     *20*        *, at*              *M.*

*Dated:*

**ROBINOWITZ COHLAN DUBOW & DOHERTY LLP**

*Attorneys for*

199 MAIN STREET
WHITE PLAINS, NEW YORK 10601

*To:*

RECEIVED

AUG 1 1 2006

TIMOTHY C. IDONI
COUNTY CLERK
COUNTY OF WESTCHESTER

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER

.........................................................................................................

DEVELOPMENTAL STRATEGIES COMPANY LLC,
PROFIT SHARING PLAN,

                             Plaintiff,

      -against-

NODINE REALTY CORPORATION, STATE OF NEW
YORK, NEWELL FUNDING, LLC and "JOHN DOE #1"
through "JOHN DOE #10", the last 10 names being
fictitious and unknown to the Plaintiff, the person or
parties intended being the persons or parties, if
any, having or claiming an interest in or lien upon
the mortgaged premises described in the verified
complaint,

                         Defendants

Index No. 06-15030

**NOTICE OF PENDENCY OF
ACTION**

.........................................................................................................

      **NOTICE IS HEREBY GIVEN** that an action has been commenced and is

now pending in this Court upon a verified complaint of the above named

Plaintiff against the above named Defendants for the foreclosure of a

Mortgage, dated January 25, 2005, executed by NODINE REALTY

CORPORATION, as Mortgagor, to DEVELOPMENTAL STRATEGIES COMPANY LLC,

PROFIT SHARING PLAN, as Mortgagee, to secure the sum of $375,000.00 and

recorded in the office of the Clerk of the County of WESTCHESTER on January 25,

2005, under control number 450490670 which mortgage has not been assigned

by the Plaintiff.

**NOTICE IS FURTHER GIVEN** that the mortgaged premises affected by said foreclosure action, at the time of the commencement of said action and at the time of the filing of this notice, was identified as premises commonly known as 57 North Central Avenue, Hartsdale, New York and identified on the official tax map of the County of Westchester, City and State of New York, Sheet 23, Block 8233, Lot 7, which premises are described on the annexed Schedule A.

The Clerk of the County of Westchester is directed to index this notice to the names of all of the above Defendants.

Dated: August 10, 2006

JOHN T. DOHERTY, ESQ.
ROBINOWITZ COHLAN DUBOW & DOHERTY LLP
Attorneys for Plaintiff
199 Main Street
White Plains, New York 10601

Index No. ⁻ ⁻ 06-15030        Year 2006

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER

DEVELOPMENTAL STRATEGIES COMPANY, LLC

                                    Plaintiff,

                - against -

NODINE REALTY CORPORATION, STATE OF NEW YORK, NEWELL FUNDING, LLC,
and "JOHN DOE #1 through "JOHN DOE #10", etc.

                                    Defendants.

Notice of Pendency

### ROBINOWITZ COHLAN DUBOW & DOHERTY LLP

Attorneys for
Plaintiff

199 MAIN STREET
WHITE PLAINS, NEW YORK 10601
(914) 949-2826
FAX (914) 949-2822

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information and belief and reasonable inquiry, the contentions contained in the annexed document are not frivolous.
Dated:..................................

                        Signature.................................................................

                        Print Signer's Name.......................................................

Service of a copy of the within
Dated:

                                                is hereby admitted.

                        .........................................................................
                        Attorney(s) for

PLEASE TAKE NOTICE

☐              that the within is a (certified) true copy of a
NOTICE OF     entered in the office of the clerk of the within named Court on
ENTRY

                                                                        20

☐              that an Order of which the within is a true copy will be presented for settlement to the
NOTICE OF     Hon.
ETTLEMENT     at                                          one of the judges of the within named Court,
              on

uted:                          20          , at                    M.

### ROBINOWITZ COHLAN DUBOW & DOHERTY LLP

Attorneys for